# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL GRAY,<br><br>                Petitioner,<br><br>vs.<br><br>JEFFREY BEARD, Secretary,<br><br>                Respondent. | CASE NO. 12-CV-1911-H (RBB)<br><br>**ORDER GRANTING MOTION TO DISMISS PETITION FOR HABEAS CORPUS AND ADOPTING REPORT AND RECOMMENDATION** |

Carl Gray ("Petitioner"), proceeding pro se and in forma pauperis, filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.)[1] On July 10, 2013, the magistrate judge issued report and recommendation to deny the petition and to deny the Respondent's motion to dismiss. After the Court granted extensions for objections, on August 21, 2013, Respondent filed an objection arguing that the Court should dismiss the petition on alternative grounds. (Doc. No. 33.) On August 29, 2013, Petitioner filed his objection to the report and

---

[1]The petition was originally submitted to the United States District Court for the Central District of California on July 20, 2012, and transferred to this Court on August 2, 2012. (Doc. No. 4.)

- 1 -                12cv1911

recommendation. For the reasons set forth below, the Court adopts the report and recommendation and overrules both Petitioners' and Respondents' objections.

## Factual Background

Petitioner is currently serving a twenty-seven years to life sentence in state prison pursuant to a November 10, 1983, conviction of one count of first degree murder with the use of a firearm, one count of second degree murder, and one count of kidnapping. (Doc. No. 1.) In 1989 and 1990, while Petitioner was housed at Folsom State Prison, two different confidential informants identified him as a suspected "Blood disruptive group member with the alias of 'Killer.'" (Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. Ex. 3, Confidential Information Disclosure Form CDC 1030 (Aug. 10, 2010).) As early as 1990, CDCR began documenting Petitioner as a suspected member of the Blood disruptive group. (Id. Ex. 4, Notice of Critical Case Information – Safety of Persons Forms CDC 812; id. Ex. 5, General Chrono (Nov. 27, 1990).) Petitioner contends that he is not a member of the Bloods. (Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. 2.)

## Procedural Background

On May 10, 2009, Petitioner filed an administrative appeal requesting an investigation into his current gang association status and that the results of the investigation be provided to the ICC. (Doc. No. 13 "Resp't's Mot. Dismiss" at 8; see Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. Ex. 24, Inmate/Parolee Appeal Form (submitted May 10, 2009).) Sergeant Williams conducted an investigation into Petitioner's gang status and found no current evidence of a gang association. (Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. Ex. 25, Informational-Gang Chrono (June 8, 2009).) Williams referred the matter to "ICC/UCC to make any appropriate changes regarding Inmate Gray's gang status." (Id.) Williams' response indicated that an investigation had been conducted, and a chrono was placed in Petitioner's file. (Id.

Ex. 24 at 1 (dated June 10, 2009).)

On April 24, 2010, Petitioner constructively filed a petition for writ of habeas corpus in state court alleging that prison officials failed to purge his C-file of any information relating to his association with the Bloods after determining, on June 8, 2009, that Petitioner was not associated with the Bloods. (Lodgment No. 2, Gray v. Uribe, Case No. EHC01359 (Cal. Super. Ct. Imperial Cnty. filed Apr. 30, 2010) (Petition at 3-5).) Petitioner challenged a December 3, 2009 ICC review that referred to him as a "Bloods" associate. (Id. at 11.) The superior court denied Petitioner's petition on July 21, 2010, finding that Petitioner did not exhaust his administrative remedies because he never appealed the December 3, 2009 ICC decision. (Lodgment No. 3, In re Gray, Case No. EHC01359, at 2.)

On July 29, 2010, Gray submitted another administrative appeal contending that the ICC at Centinela improperly noted on July 8, 2010, that he is a member of the Bloods. (Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. Ex. 26, Inmate/Parolee Appeal Form (July 29, 2010).) He relied on the findings from the 2009 investigation and requested the ICC to make "the appropriate changes" regarding his gang status. (Id.) Petitioner's appeal was screened out at the informal level as untimely. (Id.)

Petitioner attempted to submit his administrative appeal to the next level of review on August 11, 2010. (Id.; Lodgment No. 4, Gray v. Uribe, Case No. EHC01560 (Cal. Super. Ct. Imperial Cnty. filed Nov. 3, 2011) (Petition Ex. H).) Petitioner explained that it was difficult for him to challenge CDCR's documentation of Petitioner as a Blood gang member because he lacked education to address the complex matter. (Lodgment No. 4, Gray v. Uribe, Case No. EHC01560 (Petition Ex. J).)

The appeals coordinator addressed the screening on August 16, 2010, and stated, "[I]f you would like to pursue this matter further, you must submit an explanation and supporting documentation explaining why you did not or could not

file your appeal timely." (Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. Ex. 27, Memorandum Re: Screening at the Informal Level (Aug. 16, 2010).) Petitioner persisted and on August 29, 2010, he stated that "it has been beyond the scope of my intellectual ability prior to 03/30/09 to address this [timeliness] issue." (Lodgment No. 4, Gray v. Uribe, Case No. EHC01560 (Petition Ex. J).) Respondent states that after August 16, 2010, prison officials at Centinela did not accept Petitioner's appeal for further processing. (Doc. No. 13, Resp't's Mot. Dismiss at 5.)

On October 24, 2011, Petitioner constructively filed a second petition for writ of habeas corpus in state court challenging the reliability of confidential information in his central file and contending that prison officials designated him as a member of the Bloods based on unreliable and insufficient information. (Lodgment No. 4, Gray v. Uribe, Case No. EHC01560 (Petition at 3-4).) Petitioner asserted that on July 8, 2010, he appeared before the ICC at Centinela and discovered that he was still being referred to as a Blood, even though on June 8, 2009, the investigator found no evidence of his affiliation with the Bloods. (Id.) On December 7, 2011, the court denied the petition. (Lodgment No. 5, In re Gray, Case No. EHC01560, order at 1 (Cal. Super. Ct. Imperial Cnty. Dec. 7, 2011).)

On January 4, 2012, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal; there, he alleged that prison officials violated prison rules, the Due Process Clause, and the Eighth Amendment by designating him as a Bloods gang member. (Lodgment No. 6, Gray v. Uribe, [Case No. D061190] (Cal. Ct. App. filed Jan. 10, 2012) (Petition at 3-4).) Respondent filed an informal response, and Petitioner filed an informal reply. (Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. 1; Lodgment No. 7, In re Gray, Case No. D061190.) On April 11, 2012, the court denied Petitioner's petition finding that he failed to explain why it took twenty years to challenge the gang designation. (Lodgment No. 7, In re Gray, Case No. D061190.) The court concluded that

- 4 -                                                                12cv1911

Petitioner's designation was for "identification purposes only"; he was not adversely affected by the designation; and he failed to show a constitutional violation or that he was entitled to habeas relief. (Id.) Petitioner filed a petition for review in the California Supreme Court complaining that prison officials did not comply with the California Code of Regulations in designating him a Blood disruptive group member. (Lodgment No. 8, Gray v. Uribe, Case No. S202008 (Cal. filed Apr. 25, 2012) (Petition at 5).) Petitioner also argued that being referred to as a Blood violated his liberty interest. (Id. at 6.) On June 27, 2012, the California Supreme Court summarily denied the petition. (Lodgment No. 9, In re Gray, Case No. S202008.)

## Discussion

### I. Habeas Relief Pursuant to 28 U.S.C. § 2254

Respondent contends that Gray's Petition should be dismissed because the claims Petitioner asserts do not entitle him to federal habeas relief. (Doc. No. 13. Resp't's Mot. Dismiss at 11) Specifically, Respondent argues that Petitioner's designation as a disruptive group member within the CDCR does not adversely impact the legality or duration of his confinement. (Id.)

In his opposition, Petitioner alleges that his designation as a Blood disruptive group member affects the duration of his confinement because the Board of Parole Hearings is required to consider members of a disruptive group as a risk to public safety. (Doc. No. 19. Pet'r's Opp'n Mot. Dismiss at 8.) Petitioner claims that this designation contributed to a four-year parole denial and will continue to adversely affect him. (Id. at 8-9.)

Respondent replies that the likelihood of the Board denying Petitioner parole in the future based on dated references to gang affiliation is too speculative to confer habeas jurisdiction. (Doc. No. 20 Resp't's Reply at 3.)

Generally, prisoner petitions fall into two distinct categories: "(1) those challenging the fact or duration of confinement itself; and (2) those challenging the

1  conditions of confinement." McCarthy v. Bronson, 500 U.S. 136, 140 (1991).
2  Inmate challenges to validity of confinement fall within 28 U.S.C § 2254 , and 42
3  U.S.C. § 1983 governs inmate challenges to circumstances of confinement. Hill v.
4  McDonough, 547 U.S. 573, 579 (2006). A writ of habeas corpus is the appropriate
5  federal remedy when the duration of confinement is at issue. Preiser v. Rodriguez,
6  411 U.S. 475, 500 (1973). The Supreme Court explained that the specific provisions
7  in the federal habeas statute foreclose the more general remedy under section 1983.
8  Id. at 490.

The Ninth Circuit permitted habeas to be used to assert claims that are "likely to accelerate" eligibility for parole, even though success in such cases would not necessarily implicate the fact or duration of confinement. Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir. 2004) (citing Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989); Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003)). In Docken, the Ninth Circuit concluded that there is a "sufficient nexus," and therefore habeas jurisdiction exists, when a prison inmate "challeng[es] aspects of [his] parole review that . . . could potentially affect the duration of [his] confinement . . . ." Id. at 1031.

"Habeas corpus jurisdiction also exists when a [prisoner] seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." Bostic, 884 F.2d at 1269 (citing McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir. 1982)). "[T]he likelihood of the effect on the overall length of the prisoner's sentence . . . determines the availability of habeas corpus." Docken, 393 F.3d at 1028 (quoting Ramirez, 334 F.3d at 858). "[C]hallenges to the procedures used in denying parole are *only* cognizable via habeas." Docken, 393 F.3d at 1029 (citing Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997)). On the other hand, habeas jurisdiction is absent, and a section 1983 action proper, when a prisoner challenges only the conditions of his confinement. Ramirez, 334 F.3d at 859.

Respondent cites to Sandin v. Conner, 515 U.S. 472 (1995), to argue that

because the decision to grant or deny parole is based on a myriad of considerations, the possibility that CDCR's reference to Petitioner's suspected gang status will impact his eligibility for parole is speculative. (Doc. No. 13 Resp't's Mot. Dismiss at 12.) In <u>Sandin</u>, the court of appeals concluded that plaintiff had a liberty interest in remaining free of disciplinary segregation. <u>Sandin</u>, 515 U.S. at 475-76. The United States Supreme Court reversed, holding that placement in segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." <u>Id.</u> at 486. The Court also noted that the disciplinary action would not necessarily affect the length of plaintiff's sentence. <u>Id.</u> at 487.

<u>Sandin</u> arose in the context of a section 1983 proceeding and does not address the limits of habeas jurisdiction. See <u>Zepeda v. Gipson</u>, No. 1:12-cv-01431-JLT, 2012 WL 4363796, at *1 (E.D. Cal. Sept. 20, 2012). Therefore, the two statutory remedies are not always mutually exclusive, particularly in parole-related cases. <u>Docken</u>, 393 F.3d at 1030 n.6; see <u>Arroyo v. Grounds</u>, No. C 10-01007 SBA (PR), 2011 WL 4726465, at *6 (N.D. Cal. Sept. 30, 2011); <u>Jefferies v. McEwen</u>, No. 10cv2379-MMA (MDD), 2011 WL 6819114, at *2 (S.D. Cal. Aug. 9, 2011).

Some district courts have made distinctions from <u>Docken</u> and thus concluded that certain expungement claims fail to raise a federal habeas question because the allegedly false information in the prison file may not directly affect the duration of the sentence. See <u>Ricchio v. Eichenberger</u>, No. 1:09-cv-01959 AWI MJS HC, 2011 WL 43536, at *3-4 (E.D. Cal. Jan. 6, 2011) (finding that petitioner seeking to expunge an allegedly false chrono from her central file fails to state a federal habeas claim because the parole board did not mention or rely on the chrono in denying her parole); <u>Zepeda</u>, 2012 WL 4363796, at *3 (holding that petitioner challenging a determination that he is a gang member and his subsequent security confinement fails to state a federal habeas claim because petitioner did not allege that the administrative decision extended the length of his incarceration).

Other courts in this circuit have found habeas jurisdiction available for expungement claims. See Bostic, 884 F.2d at 1269 (holding that habeas jurisdiction exists to expunge a disciplinary finding likely to accelerate eligibility for parole); Flores v. Lewis, No. C 10-2773 RMW (PR), 2011 WL 2531240, at *3-4 (N.D. Cal. June 24, 2011) (concluding that an action seeking expungement of petitioner's revalidation as an active gang member stated a claim cognizable on habeas corpus); Larriva v. Watson, No. 1:06-cv-01453 OWW WMW, 2008 WL 398847, at *2-3 (E.D. Cal. Feb. 12, 2008) (concluding that prisoner challenging his gang validation and SHU placement may do so in a habeas petition); Murphy v. Dep't of Corr. & Rehab., No. C 06-04956 MHP, 2008 WL 111226, at *7 (N.D. Cal. Jan. 9, 2008) (finding that an action to expunge a serious disciplinary conviction is cognizable on habeas review because expungement could affect the duration of the confinement by making it more likely that petitioner would be granted parole); Drake v. Felker, No. 2:07-cv-00577 (JKS), 2007 WL 4404432, at *2 (E.D. Cal. Dec. 13, 2007) (same).

Furthermore, Respondent cites to Blair v. Martel, 645 F.3d 1151 (9th Cir. 2001), to argue that Blair has implicitly overruled Docken's holding that habeas relief is available for claims that are "likely to accelerate eligibility for parole." (Doc. No. 33. at 3.) In Blair, the Ninth Circuit Court of Appeals concluded that it lacked habeas jurisdiction to consider an inmates request for expedited appeal of his conviction because the request did not "necessarily spell speedier release." Blair, 645 F.3d at 1157-58. However, Blair is distinguishable from Docken. In Blair, the petitioner challenged the procedural time line of his appeals process in order to speed up the decision of whether to overturn his conviction. See Blair, 645 F.3d 1157-58. Whereas in Docken, the petitioner challenged aspects of his parole review that he alleged could affect the duration of his confinement. Docken, 393 F.3d at 1028.

In this case, Petitioner has alleged that his designation as a disruptive group member has had an adverse effect on the length of his sentence because it

contributed to a four year parole denial. (Doc. No. 19 Pet'r's Opp'n Mot. Dismiss at 8.) Expungement of Petitioner's designation as a gang member, if appropriate, could affect the duration of his confinement by making it more likely that he would be granted parole. See, e.g., Martin v. Tilton, No. 08-55392, 2011 WL 1624989, at *1 (9th Cir. April 29, 2011) (unpublished memorandum disposition)[2] ("Even though Martin did not forfeit any work-time credits as a result of the disciplinary finding, we have [habeas corpus] jurisdiction because the Board of Parole will consider the charge when it evaluates Martin's eligibility for parole."). Based on this, the Court concludes that Petitioner's claim to expunge his gang member designation is cognizable on habeas corpus. See Larriva v. Watson, 2008 WL 398847, at *3. Therefore, the Court denies the motion to dismiss on this ground. The Court also overrules the Respondent's objections to the R&R.

**II. AEDPA's One-Year Statute of Limitations**

The statute of limitations for federal habeas corpus petitions is one year. 28 U.S.C.A. § 2244(d)(1). A federal petition for writ of habeas corpus may be dismissed with prejudice when it was not filed within AEDPA's one-year statute of limitations. Jiminez v. Rice, 276 F.3d 478, 483 (9th Cir. 2001). The statute of limitations is a threshold issue that must be resolved before the merits of individual claims. White v. Klitzkie, 281 F.3d 920, 921-22 (9th Cir. 2002).

In most cases challenging a conviction or sentence, the limitation period begins running on the date that the petitioner's direct review became final. 28 U.S.C.A. § 2244(d)(1)(A). However, when a petitioner challenges an administrative decision affecting the "'fact or duration of his confinement,' AEDPA's one-year statute of limitations runs from when the 'factual predicate' of the habeas claims 'could have been discovered through the exercise of due diligence.'" Mardesich v.

---

[2] Pursuant to Ninth Circuit Local Rule 36-3, unpublished dispositions issued on or after January 1, 2007, may be cited to the courts of the Ninth Circuit in accordance with Fed. R. App. P. 32.1 but are not precedent.

Cate, 668 F.3d 1164, 1172 (9th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(1)(D)). Typically, the factual predicate is the denial of an administrative appeal. See Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004) (holding that the statute of limitations begins to run when the petitioner's administrative appeal was denied); Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir. 2003) (holding that the Board of Prison Term's denial of an inmate's administrative appeal was the "factual predicate" of the inmate's claim that triggered the commencement of the limitations period).

At issue here is when the one-year statute of limitations began to run on Petitioner's claim that he was improperly designated as a member of the Bloods disruptive group. Respondent argues that the limitations period began to run in 1990, when Petitioner was first documented as a suspected gang member. (Doc. No. 13 Resp't's Mot. Dismiss at 14.) Petitioner did not, however, file a grievance to challenge his 1990 gang designation until May 10, 2009, almost twenty years later. (See Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. Ex. 24, Inmate/Parolee Appeal Form.) His grievance was accepted, and he received a response at the informal level. (Id. at 1.) Petitioner did not appeal that decision to the next level. Instead, on July 29, 2010, Petitioner filed his second grievance contending that the ICC at Centinela improperly noted on July 8, 2010, that he is a member of the Bloods. (Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. Ex. 26, Inmate/Parolee Appeal Form.) His appeal was screened out at the informal level as untimely. (Id.)

The Ninth Circuit has not yet addressed the issue of when the statute of limitations begins to run if the petitioner does not timely appeal the dismissal of an administrative ruling. See Redd, 343 F.3d at 1084; Webb v. Walker, No. 2:05-cv-00291-JKS-GGH, 2008 WL 4224619, at *4 (E.D. Cal. Sept. 15, 2008) ("[T]he true holding in Redd is that the time starts to run when the administrative decision is final, which in Redd was the date the timely administrative appeal was

denied.") The Fifth Circuit has held that the factual predicate is the date the administrative decision was issued. Kimbrell v. Cockrell, 311 F.3d 361, 363 (5th Cir. 2002) (finding that because the petitioner did not timely file a grievance after the administrative decision, the limitations period began to run on the date of the decision, not when the untimely appeal was decided).

Several district courts in this circuit have concluded that where the petitioner does not timely file an appeal, the factual predicate is the administrative decision itself. See Moreland v. Virga, No. 2:12-cv-0561 LKK KJN P, 2012 WL 5838970, at *7-8 (E.D. Cal. Nov. 16, 2012) (finding that the statute of limitations runs from the date of the administrative decision, not when the improperly filed administrative appeal is denied); Edwards v. Small, No. 10CV918-JM(JMA), 2011 WL 976606, at *2, *4 (S.D. Cal. Feb. 18, 2011) (stating that the limitations periods commenced on the dates of each of three separate disciplinary hearings and noting that petitioner's consolidated grievance was ultimately screened out as untimely); Webb v. Walker, 2008 WL 4224619, at *4-5 (finding that the factual predicate for the untimely administrative appeal was known to the petitioner when the administrative decision denying parole became final, ninety days after the decision).

Petitioner's initial classification as a Blood was done on the basis of a confidential memorandum dated October 23, 1989. Pursuant to California Code of Regulations title 15, section 3375(h), inmates do not have access to confidential materials placed in their central file. See Cal. Code Regs. tit. 15, § 3375(h). (Lodgment No. 1, In re Gray, Case No. D061190, Att'y Gen. Informal Resp. Ex. 3, Confidential Information Disclosure Form CDC 1030.)

Respondent argues that Petitioner had been aware of his designation as early as 1990 (Doc. No. 13 Resp't's Mot. Dismiss at 14.) Respondent fails to offer any specific date that triggered the statute of limitations to begin to run in 1990. On this record, the Court cannot conclude that the statute of limitations began to run in 1990 because there are no documents before the Court clearly establishing when

Petitioner was first notified of the classification at that time.

Nevertheless, Petitioner knew the factual predicate of his claim on December 3, 2009, the date he learned that "erroneous information identifying him as an associate of the 'Bloods' . . . had not been purged from his C-File . . . ." (See Lodgment No. 2, Gray v. Uribe, Case No. EHC01359 (Petition at 4).) Therefore, the limitations period began running on December 4, 2009. See Shelby, 391 F.3d at 1066. Under 28 U.S.C. § 2244(d), Petitioner had one year from that date, or until December 4, 2010, to file his federal petition for writ of habeas corpus. Petitioner filed this action on July 16, 2012, approximately nineteen months after the limitations period had expired. Absent any applicable tolling, the Petition is untimely.

**A. Statutory Tolling**

The statute of limitations under AEDPA is tolled during periods in which a properly filed habeas corpus petition is pending in the state courts. 28 U.S.C.A. § 2244(d)(2). The interval between the disposition of one state petition and the filing of another may be tolled under "interval tolling." Carey v. Saffold, 536 U.S. 214, 223 (2002). "The period that an application for post-conviction review is pending is not affected or 'untolled' merely because a petitioner files additional or overlapping petitions before it is complete." Delhomme v. Ramirez, 340 F.3d 817, 820 (9th Cir. 2003). Statutory tolling applies to "intervals between a lower court decision and a filing of a new petition in a higher court . . . ." so long as those filings are timely. Carey, 536 U.S. at 223-26. In California, a filing is timely if filed within a reasonable amount of time; some states specify a time limit usually within thirty or forty-five days. Carey, 536 U.S. at 222-23.

Respondent argues that Petitioner may not avail himself of statutory tolling because the statute of limitations period began to run in 1990 and expired long before Petitioner took any action. (Doc. No. 13 Resp't's Mot. Dismiss at 14.) Based on the record, the limitations period began to run on December 4, 2009. Despite this

liberal construction, the petition is untimely.

Petitioner's first state court petition for a writ of habeas corpus was constructively filed in Imperial County Superior Court on April 21, 2010. (Lodgment No. 2, Gray v. Uribe, Case No. EHC01359 (Petition at 19).) Thus, he filed his first state petition within the one-year period. On July 21, 2010 the state court denied that petition. (Lodgment No. 3, Gray v. Uribe, Case No. EHC01359, order at 2; see also Lodgment No. 4, Gray v. Uribe, Case No. EHC01359 (Petition Ex. E).) On October 24, 2011, after waiting fifteen months, Petitioner constructively filed his next state habeas petition, in Imperial County Superior Court. (Lodgment No. 4, Gray v. Uribe, Case No. EHC01359 (Petition Ex. I).) Finally, on January 10, 2012, Gray filed a habeas petition with the California Court of Appeal. (Lodgment No. 6, Gray v. Uribe, [Case No. D061190] (Petition).)

Here, Petitioner failed to satisfy the timeliness requirement when filing his subsequent petition with the California Court of Appeal. Petitioner waited over a year after the state superior court denied the first petition to bring another petition for a writ of habeas corpus. By filing the second petition in the superior court, Petitioner failed to present it to a higher state tribunal than the preceding petition as required for interval tolling to apply. See Carey, 536 U.S. at 225-26.

Thus, by waiting to file with the California Court of Appeal until January 10, 2012, Petitioner unreasonably delayed review of the July 21, 2010, decision denying his initial superior court petition. See Carey, 536 U.S. at 222-23. Because of the unreasonable delay, Petitioner is not entitled to statutory tolling for this first round of review. See id. at 223-26. The next round of review, triggered by the second superior court petition, fares no better. The superior court denied Gray's second habeas petition as "repetitive and an abuse of the writ" because it "again raises the same issue that [petitioner] previously raised in a habeas petition filed in this court on June 17, 2010 in case number EHC 01359." (Lodgment No. 5, In re Gray, Case No. EHC01560, order at 1.) In any event, Petitioner's second superior court petition,

constructively filed on October 24, 2011, was after the December 4, 2010, deadline and is therefore barred by AEDPA's one-year limitations period.[3]

State petitions filed after the expiration of the statute of limitations period have no tolling effect. See Ferguson v.Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("[Section] 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."). Accordingly, Petitioner is not entitled to statutory tolling for his second round of review.

**B. Equitable Tolling**

Equitable tolling of the statute of limitations is appropriate when the petitioner can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Holland v. Florida, 130 S. Ct. 2549, 2554 (2010); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). A petitioner is entitled to equitable tolling of AEDPA's one-year statute of limitations where "extraordinary circumstances beyond a prisoner's control made it impossible" to file a timely petition. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (quoting Brambles v. Duncan, 330 F.3d 1197, 1202 (9th Cir. 2003)).

"[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000). The failure to file a timely petition must be the result of external forces, not the result of the petitioner's lack of diligence. Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). "Determining whether equitable tolling is warranted is a 'fact-specific inquiry.'" Spitsyn, 345 F.3d at 799 (quoting Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001)).

Respondent argues that Petitioner is not entitled to the 434 days that passed

---

[3] Petitioner is not entitled to interval tolling for the time period between his first and second superior court petitions because he did not file his second petition in a higher level court. Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003).

between the August 16, 2010, rejection of his second administrative appeal as untimely and the second state court petition filed on October 24, 2011. (Doc. No. 13 Resp't's Mot. Dismiss at 15-17.) Respondent also contends that Petitioner is not entitled to the nineteen days between the California Supreme Court's denial of his state petition on June 27, 2012, and the constructive filing of his federal Petition on July 16, 2012. (Id.) Thus, Respondent argues the Petition is untimely by 453 days.

Petitioner acknowledges that he did not comply with the one-year statute of limitations. (Doc. No. 19 Pet'r's Opp'n Mot. Dismiss at 9.) He claims, however, that "[e]xtraordinary [c]ircumstances created by CSP at Centinela [p]rison [o]fficials" precluded him from meeting the one-year statute of limitations. (Id.) Petitioner alleges that prison officials at Centinela severely restricted his library access, so he was unable to "perform bare minimal research required to adequately state a cause of action to a court." (Id.) Respondent replies that Petitioner's allegations regarding library access are general and conclusory because Petitioner fails to indicate the dates and times he was denied access, or how many hours he was allowed to spend at the library. (Doc. No. 20 Resp't's Reply at 9.) Respondent contends that mere allegations of limited access to the law library are insufficient to toll the statute of limitations. (Id.)

The Court concluded that the factual predicate for Petitioner's claims arose on December 3, 2009. Petitioner nonetheless did not file his first state petition until April 21, 2010. (See Lodgment No. 4, Gray v. Uribe, Case No. EHC01359 (Petition).) Petitioner does not explain what additional research he needed to timely and adequately draft his federal petition to restate claims he alleged in detail in the state courts. Moreover, he does not contend that access to the library at Centinela was denied altogether.

Challenging Petitioner's assertions, Respondent argues in the Reply that Petitioner visited the law library fifty-seven times between January 13, 2010, and July 16, 2012. (Doc. No. 20 Resp't's Reply at 10) The prison records submitted by

Respondent show that between August 16, 2010, and August 17, 2011, Petitioner went to the prison library at least eleven times. (Lodgment No. 11, Centinela state prison law library visitation logs (Jan. 13, 2010-July 16, 2012).) On several occasions, Petitioner was allowed but declined to go to the library. (Id.) On these facts, Petitioner fails to establish that "'some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 130 S. Ct. at 2562.

Petitioner does not explain how this alleged limited access to the library made it impossible for him to file a timely habeas petition. Therefore, Petitioner is not entitled to equitable tolling on this basis. See Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009) (holding that petitioner was not entitled to equitable tolling where he alleged the delay in filing was due to restricted library access in administrative segregation). "[O]rdinary prison limitations on [one's] access to the law library and copier (quite unlike the denial altogether of access to his personal legal papers) were neither 'extraordinary' nor made it 'impossible' . . . to file [the] petition in a timely manner." Id.; see also Frye, 273 F.3d at 1146 (rejecting argument that lack of access to library materials automatically qualifies as grounds for equitable tolling).

Based on the foregoing, the Court grants the motion to dismiss the petition as untimely. Because the Court has concluded that the Petition must be dismissed as untimely under AEDPA, it need not reach Respondent's contention that the claims in the Petition are procedurally defaulted or have not been exhausted.

**III. Petitioner's Objection to Respondent's Reply**

Petitioner submitted a document entitled "Motion of Objection to Respondent's Reply to Petitioner's Motion of Opposition to Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus," which the Court filed nunc pro tunc to January 31, 2013. (Doc. No. 23.)

On November 21, 2012, the Court issued an order granting petitioner's ex parte application for an extension of time to file opposition to respondent's motion to dismiss petition for writ of habeas corpus (Doc. No. 16) and directed Respondent

to file a reply by December 28, 2012. On December 20, 2012, the Court granted Petitioner's second ex parte application for an extension of time to file opposition to Respondent's motion to dismiss petition for writ of habeas corpus (Doc. No. 18) and directed Respondent to file a Reply by January 17, 2013. Subsequently, Respondent filed his reply. (Doc. No. 20 Resp't's Reply.) Petitioner's objection is without merit because the reply was authorized and requested by the Court. To the extent Petitioner's motion of objection to respondent's reply seeks an order striking the reply, the Court denies the motion.

## Conclusion

For the foregoing reasons the Court denies the petition, adopts the report and recommendation, and overrules the objections.

IT IS SO ORDERED.

DATED: September 6, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT